ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
By: Jacob M. Bergman
Special Assistant Attorney General
120 Broadway, 12th Floor
New York, New York 10271
Phone:    (212) 417-2040
Fax:        (212) 417-4604

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT P. KANE,<br>By and on Behalf of the United States of America,<br>Relator,<br><br>State of New York, *ex rel.*<br>Robert P. Kane, Relator,<br><br>State of New Jersey, *ex rel.*<br>Robert P. Kane, Relator,<br><br>                    vs.<br><br>HEALTHFIRST, INC.,  *et al.*,<br><br>                        Defendants. | **COMPLAINT-IN-INTERVENTION<br>OF THE STATE OF NEW YORK**<br><br><br>**Civil Action No. 11-2325 (ER)** |
| STATE OF NEW YORK,<br><br>                    Plaintiff-Intervenor,<br>          vs.<br><br>CONTINUUM HEALTH PARTNERS, INC.; BETH<br>ISRAEL MEDICAL CENTER d/b/a MOUNT SINAI<br>BETH ISRAEL; and ST. LUKE'S-ROOSEVELT<br>HOSPITAL CENTER d/b/a MOUNT SINAI ST.<br>LUKE'S and MOUNT SINAI ROOSEVELT,<br><br>                        Defendants. | |

1.    The State of New York, acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit (the "State"), having filed a notice of intervention pursuant to State Fin. Law § 190(2)(c), alleges for its complaint-in-intervention as follows:

## PRELIMINARY STATEMENT

2.    This is a civil fraud action brought by the State against Continuum Health Partners, Inc. ("Continuum"), Beth Israel Medical Center d/b/a Mount Sinai Beth Israel ("Beth Israel"), and St. Luke's-Roosevelt Hospital Center d/b/a Mount Sinai St. Luke's and Mount Sinai Roosevelt  ("SLR," and together with Continuum and Beth Israel, the "Defendants"), under the New York State False Claims Act ("NYFCA"), State Fin. Law §§ 187 *et seq.*, to recover damages sustained by, and penalties owed to, the State as the result of the Defendants having knowingly concealed and knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State.

3.    Beth Israel, SLR, and Long Island College Hospital ("LICH") (collectively, the "Hospitals") are hospitals within New York City that were previously part of a network of non-profit hospitals operated and coordinated by Continuum.  The Hospitals provided services to a range of patients, including those enrolled in Medicaid managed-care plans.

4.    Pursuant to Medicaid regulations, the Hospitals were entitled to receive as payment for services rendered to Medicaid managed-care patients only the amount paid by the managed-care organization ("MCO") and were not permitted to seek additional payments from Medicaid or, with certain limited exceptions not relevant here, the patients.

5.    The Hospitals were part of the hospital network of Healthfirst, Inc. ("Healthfirst"), an MCO, and rendered care to numerous patients who obtained their Medicaid managed-care plans through Healthfirst.  Pursuant to their contracts with Healthfirst, the

Hospitals obtained from Healthfirst the contractually fixed managed-care payment for services rendered to the Healthfirst beneficiaries.  Starting in or around early 2009 and continuing to in or around late 2010, the Hospitals also submitted improper claims to Medicaid for additional payments for these services, as a result of erroneous coding contained in electronic remittances issued by Healthfirst.

6.      In September 2010, the New York Office of the State Comptroller (the "Comptroller") identified a small number of claims submitted by Continuum on behalf of some of its Hospitals and notified Continuum that Medicaid had been wrongly billed as a secondary payor for these claims.

7.      In early February 2011, Continuum and the Hospitals became aware of the much larger extent of the overbilling as a result of an internal investigation conducted by a Continuum employee, Relator Robert Kane ("Kane"), which revealed that approximately 900 specific claims totaling over $1 million may have been wrongly submitted to and paid by Medicaid as a secondary payor.

8.      Nonetheless, Continuum failed to take steps to repay all of the affected claims within 60 days after these claims had been identified.  Instead, Continuum proceeded to repay only small batches of affected claims, some of which were brought to its attention by the Comptroller, over the next more than two years.  Final repayments were not made until March 2013, and repayments were made for more than 300 of the claims only after the Government issued a Civil Investigative Demand to Continuum concerning these payments in June 2012.

## JURISDICTION AND VENUE

9.      Eric T. Schneiderman is the Attorney General of the State of New York. He is

authorized to recover three times the amount of damages sustained by the State on account of Defendants' false and fraudulent claims and statements along with civil penalties of between $6,000 and $12,000 per violation pursuant to the New York State False Claims Act, State Fin. Law §§ 189, 190(1).

10.     On or about May 15, 2014, Relator filed an amended complaint on behalf of himself, the Federal government and the State of New York alleging violations of the Federal and New York State False Claims Acts.

11.     On May 23, 2014, the State of New York filed a Notice of Intention to Intervene in this action in part, pursuant to State Fin. Law § 190(2)(c).

12.     This Court has subject matter jurisdiction to entertain the original actions under 28 U.S.C. §§ 1331 and 1345, and pursuant to 31 U.S.C. § 3732(b) because the action arises from the same transaction or occurrence as an action brought under 31 U.S.C. § 3730, and it has supplemental jurisdiction to entertain the state statutory cause of action pursuant to 28 U.S.C. § 1367(a).

13.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1391(c), because each of the Defendants is located within this District and because some of the false or fraudulent acts set out in 31 U.S.C. § 3729 occurred in this District.

## PARTIES

14.     Plaintiff is the State of New York, acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit.

15.      Relator Kane is a citizen of the United States and formerly worked for Defendant Continuum as its Technical Director, Revenue Cycle Operations, Hospital Systems & Operations, from November 4, 2004, until his termination on February 8, 2011.  Kane filed his

original complaint in this action on April 5, 2011, and filed an amended complaint on May 15, 2014.

16.     Defendant Continuum is a not-for-profit corporation and, at all relevant times, was a member of certain not-for-profit hospitals, including Beth Israel, SLR, and LICH. Continuum's principal place of business is located at 555 West Fifty-Seventh Street, New York, New York 10019.   In or around September 2013, Continuum and Mount Sinai Hospital System engaged in a transaction that combined certain aspects of the two hospital systems and changed the by-laws of Beth Israel and SLR to make the newly created Mount Sinai Hospitals Group, Inc. ("Mount Sinai Hospitals Group") the sole member of each.

17.     Beth Israel is a not-for-profit hospital corporation, whose current tax-exempt corporate member is the Mount Sinai Hospitals Group.  Beth Israel does business as Mount Sinai Beth Israel and has a principal place of business at 10 Nathan D. Perlman Place, New York, New York 10003.[1]

18.     SLR is a not-for-profit hospital corporation, whose current tax-exempt corporate member is the Mount Sinai Hospitals Group.  SLR does business as Mount Sinai St. Luke's and Mount Sinai Roosevelt and has a principal place of business of 1000 Tenth Avenue, New York, New York 10019.

---

[1] Pursuant to an agreement between Beth Israel and the State, Beth Israel has agreed to "assume all liabilities of LICH to the State of New York in [this action], including without limitation, any penalties."  For this reason, though the State filed a notice of intervention as against LICH, LICH is not named as a defendant in this action.

<u>FACTS</u>

I.   <u>Applicable Statutes and Regulations</u>

**A.  The Medicaid Program and Prepaid Healthcare Service Plans**

19.      Pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, the Medicaid Program was established in 1965 as a joint federal and state program to provide financial assistance to individuals with low incomes to enable them to receive medical care. Under Medicaid, each state establishes its own eligibility standards, benefit packages, payment rates and program administration in accordance with certain federal statutory and regulatory requirements.  The state pays the health care providers for services rendered to Medicaid recipients, with the state obtaining the federal share of the Medicaid payment from accounts that draw on the United States Treasury.  *See* 42 C.F.R. §§ 430.0-.30.

20.      The New York State Legislature established New York's Medicaid system in 1966, *see* Act of Apr. 30, 1966, ch. 256, 1966 N.Y. Laws 844, the year after Congress created the federally funded Medicaid program, *see* Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 344 (1965).  Under this system, Medicaid is administered at the state level by the New York State Department of Health ("DOH").  *See* N.Y. Pub. Health Law § 201(1)(v).

21.      Section 1932 of the Social Security Act gives states the option to use MCOs to deliver Medicaid benefits and to require that individuals enroll with an MCO as a condition of receiving benefits.  *See* 42 U.S.C. § 1396u–2(a)(1)(A).  Pursuant to Title 11 of Article 5 of the New York Social Services Law, New York State established a managed care program under the medical assistance program, known as the Medicaid Managed Care ("MMC") Program.  *See* N.Y. Soc. Serv. Law § 364–j.  DOH is authorized, pursuant to Article 44 of the New York Public

Health Law, to certify Health Maintenance Organizations ("HMOs"), *see* N.Y. Pub. Health Law § 4400 *et seq.*, to operate as MCOs within the State.

22.     The operation and structure of HMOs are governed by New York State regulation.  *See* N.Y. Comp. Codes R. & Regs. tit. 10, pt. 98.  A Prepaid Health Services Plan ("PHSP") is a type of special-purpose HMO specifically authorized in New York.  *See id.* §§ 98-1.1, 98-1.2(ff).  PHSPs must meet the same structure and operating criteria as HMOs, but a substantial portion of their enrollees must be beneficiaries of government health-care coverage programs such as Medicaid.  *See id.* § 98-1.2(ff); N.Y. Pub. Health Law § 4403–a(1).

23.     Healthfirst is a not-for-profit MCO that, among other things, provides comprehensive prepaid health care coverage for Medicaid recipients as a PHSP.  At all relevant times, Healthfirst was sponsored by numerous hospitals and medical centers in New York, including Beth Israel, SLR, and LICH.

24.     Healthfirst entered into a Medicaid Managed Care/Family Health Plus model contract with DOH effective October 1, 2005 (the "MMC Contract").  Pursuant to this contract, Healthfirst agreed to provide to its Medicaid-eligible enrollees certain services, including hospital and physician services (defined in the contract as "Covered Services"), in exchange for a monthly payment by SDOH.  *See* MMC Contract ¶ 3.1.  To provide these Covered Services, Healthfirst contracts with doctors, hospitals, and other healthcare providers who directly provide the services to Healthfirst's Medicaid-eligible enrollees.  Pursuant to the MMC Contract, Healthfirst's reimbursement for the Covered Services is limited to the amount it was paid for the monthly fee and it is not otherwise permitted to charge DOH on a fee-for-service or other basis for the cost of those services.  *Id.*

25.     In determining which providers may participate in Healthfirst's provider network for Medicaid enrollees, Healthfirst is obligated to limit participation to providers who agree that the payment they receive from Healthfirst for Covered Services is payment in full for services provided to the enrollees, except for the collection of applicable co-payments from the enrollees as provided by law.  *See* MMC Contract ¶ 21.1(e).

26.     The New York State Medicaid Program has also issued guidance providing that when a provider accepts a Medicaid recipient as a patient, the provider agrees, in the case of a Medicaid managed care enrollee, "to bill the recipient's managed care plan for services covered by the contract."  N.Y. State Medicaid Program, *Information for All Providers, General Policy*, at 10.  In addition, a provider who participates in Medicaid fee-for-service, but who does not participate in the recipient's Medicaid managed care plan, may not bill Medicaid fee-for-service for any services included in the managed care plan, with the exception of family planning services.  *Id.*

27.     Moreover, "when a provider accepts a Medicaid recipient as a patient, the provider is prohibited from requesting any monetary compensation from the recipient, or his/her responsible relative, except for any applicable Medicaid co-payments.  A provider may charge a Medicaid recipient, including a Medicaid recipient enrolled in a managed care plan, ONLY when both parties have agreed PRIOR to the rendering of the service that the recipient is being seen as a private pay patient.  This must be a mutual and voluntary agreement."  *Id.*

### B.  The False Claims Act and the Patient Protection and Affordable Care Act

28.     As relevant here, the NYFCA establishes civil penalties and treble damages liability to the State for an individual or entity that:

> knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state…

8

State Fin. Law § 189(1)(h).

29.     "Knowing," within the meaning of the NYFCA, is defined to include reckless

disregard, or deliberate ignorance, to the truth or falsity of the information.  *Id.*  §§ 188(3)(a)(ii),

(iii).  And an "obligation," under the statute, includes the "retention of any overpayment."  *Id.*

§ 188(4).

30.     Section 6402(a) of the Patient Protection and Affordable Care Act of 2010

(Enhanced Medicare and Medicaid Program Integrity Provisions), Pub. L. No. 111-148, 124 Stat.

119, 753-56 (2010), amended the Social Security Act by adding a new provision that addresses

what constitutes an overpayment under the FCA in the context of a federal health care program.

Under this section, an overpayment is defined as "any funds that a person receives or retains

under Title XVIII or XIX to which the person, after applicable reconciliation, is not entitled."

*See* 42 U.S.C. § 1320a–7k(d)(4)(B).  In addition, this provision specifies in relevant part that an

"overpayment must be reported and returned" within "60 days after the date on which the

overpayment was identified."  *Id.* § 1320a–7k(d)(2).

31.     Failure to return any overpayment, such as each of the claims on which

Continuum received an overpayment from Medicaid, constitutes a reverse false claim actionable

under State Fin. Law § 189(1)(h) of the NYFCA.  Under the Act, the State is entitled to recover

three times the amount of each claim and, for each claim or overpayment a civil penalty of not

less than $6,000 and not more than $12,000.

## II. Healthfirst's Erroneous Remittance Code Caused the Hospitals to Overbill the State for Significant Medicaid Expenses

32.     As an MCO, Healthfirst enrolled certain Medicaid-eligible individuals into its

Medicaid Managed Care plan.  As part of its functions as an MCO, Healthfirst contracted with

numerous providers, including Beth Israel, SLR and LICH (at the time, all part of Continuum),

to provide services to its enrollees (the "Participating Providers").  Consistent with the MMC

Contract that Healthfirst entered into with DOH, DOH made monthly payments to Healthfirst for

any and all Covered Services that were utilized by Healthfirst's enrollees.  In addition,

Healthfirst paid the Participating Providers for any Covered Services rendered by those providers

to its enrollees.

33.     As part of providing payment to the Participating Providers, Healthfirst issued

electronic remittances to any providers indicating, among other things, the amount of any

payment for a claim for services rendered by the provider.  The remittance also contained certain

codes concerning whether the providers could seek additional payment from secondary payors,

such as Medicaid, other insurance carriers, or the patient himself or herself.  For Healthfirst

enrollees receiving Covered Services, this coding should have indicated that the providers could

not seek secondary payment (except, in certain cases, applicable co-payments from patients).

34.     Beginning in or around 2009, however, due to a software compatibility issue, the

Healthfirst remittances contained coding that erroneously indicated to the Participating Providers

that they could seek additional payment from a secondary payor.  As a result, the electronic

billing programs of numerous providers automatically generated bills to secondary payors, in

particular Medicaid and in some instances the patient.

35.     Specifically, beginning in or around January 2009, Continuum impermissibly

submitted claims on behalf of Beth Israel, SLR, and LICH to DOH, as a secondary payor, for

additional payment for Covered Services rendered to Healthfirst enrollees, above and beyond

what it had already received from Healthfirst for these services.  DOH paid each of Beth Israel,

SLR, and LICH for claims that were erroneously submitted.  A list of the erroneous claims

submitted by Beth Israel, SLR, and LICH as a result of this issue, and their subsequent histories, is attached hereto as Exhibit A.

36.     In September 2010, auditors from the Comptroller's office questioned Continuum regarding a small number of claims that it concluded had been improperly submitted to DOH for Medicaid reimbursement.  Subsequent discussions between the Comptroller, Continuum, and the software vendor revealed the cause of the problem, which related to the translation of codes in Healthfirst's billing software to codes used in Continuum's software.  The software vendor sent out a corrective software patch in early December 2010 and an explanatory memorandum on December 13, 2010.  This patch was designed to ensure that, going forward, Continuum (and other health providers that used the same software) would not improperly bill any secondary payor, such as Medicaid or the enrollee, for services provided to Healthfirst enrollees.

37.     After the Healthfirst problem was discovered, Continuum management asked Kane to ascertain which claims had been improperly submitted to DOH as a result of this software error.  In late 2010 and January 2011, Kane and other Continuum staff members gathered and analyzed Continuum's billing data from several different sources, in an attempt to comprehensively identify possibly affected claims.  In January 2011, the Comptroller identified a few additional claims to Continuum in which Continuum had improperly billed Medicaid as a secondary payor, and had further discussions with Continuum relating to these claims.

38.     On February 4, 2011, Kane sent an email to Kathryn Dakis, Continuum's Vice President for Patient Financial Services, Toni Jones, Continuum's Assistant Vice President for Revenue Cycle Operations-Systems, and other Continuum management, attaching a spreadsheet identifying more than 900 Beth Israel, SLR, and LICH claims going back to May 2009, totaling over $1 million, that Kane identified as containing the Healthfirst billing code that caused the

11

billing problem.  While Kane's email indicated that further analysis was needed to corroborate his findings, Kane had successfully identified the vast majority of the claims that had been erroneously billed.  A copy of Kane's February 4 email is attached hereto as Exhibit B.

39.     Continuum terminated Kane on February 8, 2011.  Continuum did nothing further with Kane's analysis or the claims identified therein.  Continuum reimbursed DOH in February 2011for only five of the improperly submitted claims.

40.     Over the following year, the Comptroller continued to analyze Continuum's billing and identified several additional tranches of affected claims.  Starting in March 2011 and continuing through February 2012, the Comptroller brought these additional affected claims to Continuum's attention.

41.     Largely in response to the Comptroller's inquiries, Continuum reimbursed DOH for claims improperly billed to Medicaid in more than thirty tranches after February 2011, beginning in April 2011 and concluding only in March 2013, fraudulently delaying its repayments for up to two years after Continuum knew of the extent of the overpayments. Indeed, Continuum reimbursed DOH for over 300 affected claims only in or after June 2012, when the Government issued a Civil Investigative Demand to Continuum seeking information relating to these payments.  Continuum never brought Kane's analysis to the attention of the Comptroller despite many communications with the Comptroller concerning additional claims to be repaid.

42.     Continuum thus intentionally or recklessly failed to take the necessary steps to timely identify the claims affected by the software issue or to timely reimburse DOH for those affected claims that resulted in overbilling to Medicaid.

## CLAIM FOR RELIEF
### (Violation of State Fin. Law § 189(1)(h))

43.     The State incorporates by reference all paragraphs of this complaint set out above as if fully set forth.

44.     Defendants knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State.

45.     Knowing concealment, avoidance or decrease of an obligation to pay or transmit money to the State was made or done knowingly, as defined in State Fin § 188(3)(a).

**WHEREFORE**, the State requests that judgment be entered in its favor and against Defendants as follows:

(a)     treble the State's damages, in an amount to be determined at trial, plus a $12,000 penalty for each overpayment retained in violation of the NYFCA;

(b)     an award of costs pursuant to State Fin. Law § 188(3); and

(c)     for such further relief as is proper.

Dated: New York, New York
        June 27, 2014

THE STATE OF NEW YORK
By its attorney,
ERIC T. SCHNEIDERMAN
Attorney General

By:     _____/s Jacob M. Bergman_____
        Jacob M. Bergman
        Special Assistant Attorney General
        Medicaid Fraud Control Unit
        120 Broadway, 12th Floor
        New York, New York 10271
        Phone:   (212) 417-2040
        Fax:     (212) 417-4604
        Email:  jacob.bergman@ag.ny.gov