## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT P. KANE, By and on Behalf of the United States of America, Relator<br><br>State of New York, ex rel. Robert P. Kane, Relator,<br><br>State of New Jersey, ex rel. Robert P. Kane, Relator,<br><br>vs.<br><br>HEALTHFIRST, INC; HF MANAGEMENT SERVICES, LLC; HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC.; CONTINUUM HEALTH PARTNERS, INC.; BETH ISRAEL MEDICAL CENTER; ST. LUKE'S-ROOSEVELT HOSPITAL CENTER; LONG ISLAND COLLEGE HOSPITAL; BELLEVUE HOSPITAL CENTER; BLYTHEDALE CHILDREN'S HOSPITAL; BRONX-LEBANON HOSPITAL CENTER; THE BROOKDALE UNIVERSITY HOSPITAL AND MEDICAL CENTER; BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER; THE BROOKLYN HOSPITAL CENTER; CARITAS HEALTH CARE-MARY IMMACULATE HOSPITAL; CARITAS HEALTH CARE-ST. JOHN'S QUEENS; COLER-GOLDWATER SPECIALTY HOSPITAL AND NURSING FACILITY; COMMUNITY HOSPITAL AT DOBBS FERRY; | **Civil Action No.  11 Civ. 2325 (ER)**<br><br>**FILED UNDER SEAL**<br><br>**AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT AND STATE FALSE CLAIMS ACTS**<br><br>**JURY TRIAL DEMANDED PURSUANT TO FED.R.CIV.P. 38(b)** |

CONEY ISLAND HOSPITAL;
CUMBERLAND DIAGNOSTIC &
TREATMENT CENTER; EAST NEW
YORK DIAGNOSTIC &
TREATMENT CENTER; ELMHURST
HOSPITAL CENTER; FLUSHING
HOSPITAL MEDICAL CENTER;
FRANKLIN HOSPITAL MEDICAL
CENTER; GOOD SAMARITAN
HOSPITAL MEDICAL CENTER;
GOUVERNEUR HEALTHCARE
SERVICES; HARLEM HOSPITAL
CENTER; HUDSON VALLEY
HOSPITAL CENTER; HUNTINGTON
HOSPITAL; INTERFAITH MEDICAL
CENTER; JACOBI MEDICAL
CENTER; JAMAICA HOSPITAL
MEDICAL CENTER; KINGSBROOK
JEWISH MEDICAL CENTER; KINGS
COUNTY HOSPITAL CENTER;
LAWRENCE HOSPITAL CENTER;
LENOX HILL HOSPITAL; LINCOLN
MEDICAL AND MENTAL HEALTH
CENTER; LONG BEACH MEDICAL
CENTER; LONG ISLAND JEWISH
MEDICAL CENTER; LUTHERAN
MEDICAL CENTER; MAIMONIDES
MEDICAL CENTER; MERCY
MEDICAL CENTER;
METROPOLITAN HOSPITAL
CENTER; MONTEFIORE MEDICAL
CENTER; MONTEFIORE NORTH
DIVISION (PREVIOUSLY OUR
LADY OF MERCY MEDICAL
CENTER); MORRISANIA
DIAGNOSTIC & TREATMENT
CENTER; THE MOUNT SINAI
HOSPITAL; THE MOUNT SINAI OF
QUEENS HOSPITAL; THE MOUNT
VERNON HOSPITAL; NASSAU
UNIVERSITY MEDICAL CENTER;
NEW ISLAND HOSPITAL; NEW

YORK EYE AND EAR INFIRMARY;
NEW YORK DOWNTOWN
HOSPITAL; NORTH CENTRAL
BRONX HOSPITAL; NORTH
GENERAL HOSPITAL; NORTH
SHORE UNIVERSITY HOSPITAL
CENTER; NORTH SHORE
UNIVERSITY HOSPITAL AT
FOREST HILLS; NORTH SHORE
UNIVERSITY HOSPITAL AT GLEN
COVE; NORTH SHORE
UNIVERSITY HOSPITAL AT
PLAINVIEW; NORTHERN
WESTCHESTER HOSPITAL;
PECONIC BAY MEDICAL CENTER;
PENINSULA HOSPITAL CENTER;
PHELPS MEMORIAL HOSPITAL;
QUEENS HOSPITAL CENTER;
RENAISSANCE HEALTH CARE
NETWORK DIAGNOSTIC &
TREATMENT CENTER; SEGUNDO
RUIZ BELVIS DIAGNOSTIC &
TREATMENT CENTER; SOUND
SHORE MEDICAL CENTER OF
WESTCHESTER; SOUTH NASSAU
COMMUNITIES HOSPITAL;
SOUTHSIDE HOSPITAL; ST.
BARNABAS HOSPITAL; ST.
CATHERINE OF SIENA HOSPITAL;
ST. CHARLES HOSPITAL &
REHABILITATION CENTER; ST.
JOSEPH'S MEDICAL CENTER-
WESTCHESTER; ST. JOHN'S
EPISCOPAL HOSPITAL-SOUTH
SHORE; ST. JOHN'S RIVERSIDE
HOSPITAL; STATEN ISLAND
UNIVERSITY HOSPITAL; VICTORY
MEMORIAL HOSPITAL;
WESTCHESTER MEDICAL
CENTER; WHITE PLAINS
HOSPITAL; WINTHROP HOSPITAL;
WOODHULL MEDICAL AND

MENTAL HEALTH CENTER;
WYCKOFF HEIGHTS MEDICAL
CENTER; CHILDREN'S
SPECIALIZED HOSPITAL; CHRIST
HOSPITAL; EAST ORANGE
GENERAL HOSPITAL;
ENGLEWOOD HOSPITAL AND
MEDICAL CENTER; HOBOKEN
UNIVERSITY MEDICAL CENTER;
HOLY NAME MEDICAL CENTER;
JERSEY CITY MEDICAL CENTER;
PALISADES MEDICAL CENTER;
RARITAN BAY MEDICAL CENTER-
OLD BRIDGE; RARITAN BAY
MEDICAL CENTER-PERTH
AMBOY; ROBERT WOOD
JOHNSON UNIVERSITY HOSPITAL
HAMILTON; SAINT CLARE'S
HEALTH SYSTEM- BOONTON;
SAINT CLARE'S HEALTH SYSTEM-
DENVILLE; SAINT CLARE'S
HEALTH SYSTEM-DOVER; SAINT
CLARE'S HEALTH SYSTEM-
SUSSEX; SAINT MICHAEL'S
MEDICAL CENTER; SOMERSET
MEDICAL CENTER; ST. JOSEPH'S
WAYNE HOSPITAL; ST. JOSEPH'S
HOSPITAL & MEDICAL CENTER;
AND TRINITAS HOSPITAL,

        Defendants.

## NATURE OF THE CASE

1.      Relator Kane brings this action on behalf of the United States of

America and the state of New York and the state of New Jersey ("Government

Entities") to recover damages and penalties under the False Claims Act, 31 U.S.C.

§3729, et seq., and state law based on various false claims acts as more particularly

described below against the following Defendants:  (a) three (3) Defendant Payors identified in Schedule A annexed hereto and incorporated herein by reference ("Defendant Payors"); (b) seventy-eight (78) Defendant New York Providers identified in Schedule B annexed hereto and incorporated herein by reference ("Defendant New York Providers"); and (c) twenty (20) Defendant New Jersey Providers identified in Schedule C annexed hereto and incorporated herein by reference ("Defendant New Jersey Providers")(Defendant New York Providers and Defendant New Jersey Providers collectively referred to as "Defendant Providers" and Defendant Providers and Defendant Payors collectively referred as "Defendants").

2.     Defendants are engaged in the business of providing government subsidized health care services.  Defendant Payors contract with Defendant Providers to provide health care to hundreds of thousands of Medicaid patients throughout New York and New Jersey.  In November 2010, Defendant Payors learned that they had an electronic remittance coding error that erroneously billed Medicaid as a secondary payor.  Defendant Payors informed Defendant Providers of the coding error.  Defendant Payors concealed this error and the resulting over billings from the Government Entities.  Likewise, Defendant Providers concealed the coding error and failed to report and return the overpayments to the Government Entities in violation of federal and state law.

3.      In or around September 2010, as a result of a New York State investigation into claims billings for four (4) patients of Defendant Continuum Health, Relator Kane, a technical director whose responsibility was to investigate the claims, discovered this remittance coding error and informed Defendant Payors and Continuum Health.  Following this discovery and notice, Defendant Payors stopped using the erroneous code, but concealed it.  Defendant Payors also did not report the coding error or the overpayments associated with it.

4.      Based on his investigation into only three (3) hospitals, e.g., Defendants Beth Israel MC, St. Luke's-Roosevelt and Long Island CH, for the limited time of May 2009 to November 2010, Relator Kane discovered and disclosed over $1.4 million in overpayments caused by the erroneous remittance code and pushed for its disclosure to the Government Entities.  Instead of disclosure, Relator Kane was fired two (2) business days after he disclosed this massive over billing to Defendant Continuum Health's upper management.

5.      The full extent of the over billing is enormous.  From 2007 to November 26, 2010, Defendants utilized an erroneous remittance code CAS*CO*2*$$$$.$$, which improperly billed the Government Entities as a secondary payor.  This one, erroneous remittance code massively inflated the Medicaid daily electronic claims processing for a significant number of hospitals throughout New York and New Jersey over nearly a four (4) year period.

Extrapolating Relator Kane's investigatory results to all Defendants for the entire time period results in an overpayments of approximately $125 million.

## THE PARTIES

6.      Relator Robert Kane is a citizen of the United States and formerly worked for Defendant Continuum Health as the Technical Director, Revenue Cycle Operations, Hospital Systems & Operations ("Technical Director Operations") from November 4, 2004 until his illegal termination on February 8, 2011.

7.      As the Technical Director Operations, Relator Kane had direct and personal involvement for hospital patient billing systems, computer coding issues, regulatory issues, as well as investigatory responsibilities for patient billing matters for Defendant Continuum Health.  In this capacity, Relator Kane has direct and independent knowledge of the matters set forth in this Complaint.

8.      At all times relevant, Relator Kane performed his duties and responsibilities in a satisfactory manner.

9.      In his performance review dated March 30, 2009, Relator Kane received the following final comments:

> Bob is an extremely knowledgeable management resource.  He has worked hard this year to enhance his understanding of the business process and goals of the entire department.  He has been able to translate and apply this knowledge into a solid underpinning of how he approaches the work done within Systems.  This was a major goal from last year's evaluation.  He has shifted a good deal of his focus to the business side while still managing the technical aspects of his work.  As he

continues to do this, he will become an even greater asset to the department.

Bob has also taken steps to be more involved on a day-to-day basis with the activities preformed and assigned to his staff.  This has resulted in improvement on the delivery and timeliness of many tasks.  As he continues to do this, he will be able to enhance productivity in his areas of responsibility.

Bob is a valuable member of the team and a key asset to the department.

10.     Relator Kane received a merit pay increase in October 2010, which reflected his superior performance.

11.     At no time did Relator Kane ever receive any discipline or otherwise have any negative performance issues.

12.     Defendant Payors as identified in Schedule A are corporations headquartered in New York with a principal place of business located at 25 Broadway, New York, New York  10004.  Defendant Payors have a central and unified facility and operation.  At that location, Defendant Payors share the same computer and software systems, the same claims processing department, and common personnel throughout all of their operations.

13.     Defendant Healthfirst is a not-for-profit health plan sponsored by major hospitals and medical centers in New York.  Defendant Healthfirst operates through two (2) subsidiaries, Healthfirst PHSP, Inc, which services Medicaid, Family Health Plus, and Child Health Plus populations, and Managed Health, Inc.

14.     Defendant HF provides comprehensive management serves to healthcare organizations in New York, New Jersey, Pennsylvania and Florida.

15.     Defendant Healthfirst NJ is a not-for-profit managed care organization that provides healthcare in New Jersey.  Defendant Healthfirst NJ is part of the Healthfirst family of companies, which includes Defendants Healthfirst and HF.

16.     Defendant New York Providers as set forth in Schedule B engaged in the electronic over billing and received overpayments described more fully herein and failed to report and return the overpayments to the Government Entities in violation of federal and state law.

17.     Defendant New Jersey Providers as set forth in Schedule C engaged in the electronic over billing and received overpayments described more fully herein and failed to report and return the overpayments to the Government Entities in violation of federal and state law.

18.     Defendant Continuum Health is a corporation with its principal place of business located at 555 West 57th Street, New York, New York  10019. Defendant Continuum Health was Relator Kane's employer.  Defendant Continuum Health is a partnership between Defendants Beth Israel MC, St. Luke's-Roosevelt and Long Island CH.  Defendant Continuum Health delivers in-patient care through nearly 3,100 certified beds located in major hospital facilities in Manhattan and Brooklyn.  Defendant Continuum Health providers also see

patients in-group and private practice settings and ambulatory centers in the Bronx, Brooklyn, Queens and Manhattan, and in Westchester County.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §1331, 28 U.S.C. §1345, 31 U.S.C. §3730(b) in that the action arises under the laws of the United Sates of America and that certain claims asserted herein are brought in the name and for the benefit of the Government Entities.  Nationwide service of process is provided under 31 U.S.C. §3732(a).

20.     The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. §3732(a) as the Defendants transact or have transacted business in the Southern District of New York ("District") or have committed acts proscribed by 31 U.S.C. §3729 within this District.

21.     Venue is proper in the District under 31 U.S.C. §§3732(a) and 28 U.S.C. §1391(b) and (c) in that, among other things, Defendants regularly transact business within the District.

## STATEMENT OF FACTS

### The Concealment And Failure To Return A Medicaid Overpayment Is A Violation Of The False Claims Act

22.     Title XVIII of the Social Security Act, 42 U.S.C. §1395, et seq., establishes the Health Insurance for the Aged and Disabled Program, collectively known as the Medicare program.  The Secretary of Health and Human Services ("HHS") administers the Medicare Program through the Health Care Financing

Administration ("HCFA"), a component of HHS now known as Centers for

Medicare and Medicaid Services ("CMS").  The Medicare program is comprised

of two parts.  Part A provides basic insurance for the costs of hospitalization and

post-hospitalization care.  42 U.S.C. §§1395c-1395i-2 (1992).  Part B is a federally

subsidized, voluntary insurance program that covers a percentage (typically eighty

percent) of the fee schedule amount of physician and laboratory services.  42

U.S.C. §§1395k, 1395l, 1395x(s). Reimbursement for Medicare claims is made by

the United States through HCFA. HCFA, in turn, contracts with private insurance

carriers to administer and pay Part B claims from the Medicare Trust Fund.  42

U.S.C. §1395u.  In this capacity, the carriers act on behalf of HCFA. 42 C.F.R.

§421.5(b) (1994).

23.    Medicaid is a federally assisted grant program for the States.

Medicaid enables the States to provide medical assistance and related services to

needy individuals.  HCFA administers Medicaid on the federal level.  Within broad

federal rules, however, each state decides who is eligible for Medicaid, the services

covered, payment levels for services and administrative and operational

procedures.

24.    At all times relevant to this Complaint, the United States provided

funds to the States through the Medicaid program pursuant to Title XIX of the

Social Security Act, 42 U.S.C. §1396 et seq.  Enrolled providers of medical

services to Medicaid recipients are eligible for payment for covered medical

services under the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act.  By becoming a participating provider in Medicaid, enrolled providers agree to abide by the rules, regulations, policies and procedures governing claims for payment, and to keep and allow access to records and information as required by Medicaid.

25.     In order to receive Medicaid funds, enrolled providers, together with authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the State.  Among the rules and regulations which enrolled providers agree to follow are to: (1) bill only for covered services which are medically necessary; (2) neither bill for any services or items which were not performed or delivered in accordance with applicable policies nor submit false or inaccurate information relating to provider costs or services; (3) not engage in any act or omission that constitutes or results in over utilization of services; (4) be fully licensed and/or certified under the applicable state and federal laws to perform the services provided to recipients; (5) comply with state and federal statutes, policies and regulations applicable to the Medicare and Medicaid programs; (6) not engage in any illegal activities related to the furnishing of services to recipients.

26.     The Patient Protection and Affordable Care Act ("PPACA") Section
6402, Enhanced Medicare and Medicaid Program Integrity Provisions, amended
Part A of Title XI of the Social Security Act (42 U.S.C. §1301 et seq.).

27.     Section 6402(d) of PPACA provides:

(d) Reporting and Returning of Overpayments –

(1)  IN GENERAL – If a person has received an
overpayment, the person shall -

(A)  report and return the overpayment to the Secretary,
the State, an intermediary, a carrier, or a contractor, as
appropriate, at the correct address; and

(B) notify the Secretary, State, intermediary, carrier, or
contractor to whom the overpayment was returned in
writing of the reason for the overpayment.

(2)  DEADLINE FOR REPORTING AND
RETURNING OVERPAYMENTS – An overpayment
must be reported and returned under paragraph (1) by the
later of --

(A)  the date which is 60 days after the date on which the
overpayment was identified; or

(B) the date any corresponding cost report is due, if
applicable.

(3)  "ENFORCEMENT" – Any overpayment retained by
a person after the deadline for reporting and returning the
overpayment under paragraph (2) is an obligation (as
defined in section 3729(b)(3) of title 31, United States
Code) for purposes of section 3729 of such title.

(4)  DEFINITIONS – In this subsection:

(5)  KNOWING AND KNOWINGLY – The terms 'knowing' and 'knowingly' have the meaning given those in section 3729(b) of title 31, United States Code.

(6)  OVERPAYMENT – The term 'overpayment' means any funds that a person received or retains under title XVIII or XIX to which the person, after applicable reconciliation, is not entitled under such title.

28.    The False Claims Act, 31 U.S.C. §3729(a)(1)(G) provides that "any person who – knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or properly to the Government is liable to the Government Entities for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. §2461 note; Public Law 104-410), plus 3 times the amount."

29.    At all times relevant to this Complaint, the Medicaid program constituted a significant source of gross patient revenue for the Defendants.  As described below, between 2007 and 2010, Defendants significantly over billed for Medicaid reimbursements, concealed the over billing, and failed to report it to the Government Entities.

**Defendant Payors' Erroneous Remittance Code That Caused Defendant Providers to Over Bill The Government Entities For Significant Medicaid Expenses**

30.     From 2007 to November of 2010, Defendant Providers utilized the Siemens/American Healthware Eagle Product ("Siemens"), or similar computer software to electronically bill the Government Entities for substantial Medicaid claims.

31.     In or around September, 2010, the New York Office of Inspector General ("OIG") contacted Defendant Beth Israel's patient accounting office to investigate two (2) patients billings based on remittances from Defendant Healthfirst.

32.     Shortly thereafter, the OIG identified two (2) additional patient billings to investigate.

33.     As part of that investigation into these four (4) claims, Relator Kane obtained paper copies of the Defendant Healthfirst's Explanation of Payment (EOP).

34.     Relator Kane also opened a trouble ticket with Siemens as part of his investigation.

35.     Upon review of this information, Relator Kane discovered an error in billing code CAS*CO*2*$$$$.$$.

36.     The code "2" means coinsurance and should have only be used with a Claim Adjustment Group Code of "PR" for Patient Responsibility, not "CO" for Contractual Obligation.

37.     This over billing occurred because the billing and claim proprietary computer software assumed a code 2 was a Patient Responsibility, which is a valid charge amount to move to the next payor, when, in fact, code 2 was the Defendant Providers responsibility based on negotiated contracts with Defendant Payors.

38.     As a result of this coding error, when Defendant Providers posted Defendant Payors' electronic remittance advice, a bill was produced with the majority of the claim being billed to Medicaid as the secondary payors.  The Government Entities then paid these secondary bills to Defendant Providers.  This was an error, which resulted in the overpayment.

39.     In early October 2010, Relator Kane brought this coding error to Defendant Healthfirst, which ultimately confirmed it.

40.     In late October 2010, Relator Kane suggested to his supervisor, Toni Jones ("Jones"), that Defendant Continuum should stop its automated processing of Defendant Healthfirst's electronic remittance advise and temporarily revert to manual posting of payments in order to stop the over billing.

41.     Jones denied this request allegedly because Defendant Continuum did not have the manpower to manually post from one of its largest payors, Defendant Healthfirst.

42.     On December 3, 2010, Defendant Healthfirst corrected the coding

error and no additional over billings occurred.

43.     Following Relator Kane's notice to Siemens of the coding error, it

created a workaround program to correct it, which was released to all of its users.

Significantly, the workaround program only addressed coding errors prospectively.

44.     On or about December 13, 2010, Siemens notified Defendant

Providers via a Patient Accounting Release:

> ***"CO" Qualifier with Reason Code "2":***
>
> The Coinsurance amount is obtained from Adjustments
> with a Reason Code of "2" regardless of the Qualifier
> Code.  ***HealthFirst is erroneously providing
> Adjustments with Reason Code "2" which are not
> Coinsurance amounts.  The Qualifier provided for these
> Adjustments is "CO" (Contractual Obligations) rather
> than "PR" (Patient Responsibility).***  To compensate for
> this error, an option ("HK" + remit type + "OPTS" +
> menus witch, position 92) was added to indicate that it
> should only be considered as Coinsurance if the Qualifier
> is "PR".  The option was added to the NAF Options
> Control Report (RPID: PHKRMH-005). (*emphasis
> added*).
>
> When the option is set, the following changes were made
> for Adjustments with Reason Code "2" where the
> Qualifier is not "PR":
>
> 1.  The amount will not be posted as Coinsurance
> 2.  The amount will not be printed in the Coinsurance
>     column on the detail report (RPID:PHKRMH-002).

45.     Notwithstanding Defendants' knowledge of this coding error and massive over billings and associated overpayments, they did not report it or otherwise take any action to return the overpayments to the Government Entities.

46.     Knowing that the over billings were significant and occurred over an extended period of time, Relator Kane then opened a service request with Defendant Continuum's Information Technology Department for a report of affected accounts from the accounts receivable system database.

47.     However, Defendant Continuum did not timely deliver the information to Relator Kane.

48.     Notwithstanding this lack of cooperation from Defendant Continuum's upper management, Relator Kane determined that he could create a partial report by using the electronic remittance files, which Defendant Continuum had on hand going back to May 1, 2009.

49.     Based on Relator Kane's review of the raw data from the electronic remittances and by cross referencing Defendant Continuum's accounts receivable database, he determined that there were significant over billings to and overpayments from the Government Entities, which started in January 2007.

50.     Based on Relator Kane's limited analysis from May 1, 2009 to present, he determined that a total over billing to Medicaid was $1,403,980.97 for three (3) hospitals:

      a.     **Beth Israel** over billing from 5/1/2009 through 11/26/2010 $762,973.23 including (427) claims, of which

$708,098.67 in (385) claims were billed specifically to Medicaid.

b.     **St. Luke's-Roosevelt**, over billing from 5/1/2009 through 11/26/2010 $632,561.10 including (373) claims, of which $565,378.10 in (331) claims were billed specifically to Medicaid.

c.     **Long Island College Hospital**, over billing from 5/1/2009 through 11/26/2010 $143,346.50 in (57) Claims of which $130,504.20 in (49) claims were billed specifically to Medicaid.

51.     Notwithstanding this $1.4 million in over billing for the seven hundred and sixty-five (765) claims, Defendant Continuum Health reimbursed Medicaid for only the four (4) claims that the OIG brought to its attention.

52.     In or around the same time, Relator Kane and Jones were directed to call Judy McEleney of the OIG by Kathryn Dakis ("Dakis"), Vice President Patient Accounts, regarding the four (4) patient inquiries.

53.     After the assignment from Dakis, Relator Kane raised concerns about the magnitude of the over billing problem to Jones.

54.     Relator Kane asked Jones whether she intended to disclose the magnitude of the over billing problem and share his partial list of affected accounts with the OIG.  Jones responded, "it is a matter of discretion".

55.     Relator Kane pushed for full disclosure of the significant overpayments.

56.     Following these actions, Relator Kane was excluded from communications with OIG relating to the over billings and overpayments.

57.     On or about January 14, 2011, Relator Kane sent Jones a spreadsheet detailing the over billings at Beth Israel Center and provided the raw data for St. Luke's-Roosevelt and Long Island College Hospital.

58.     A week later, Relator Kane asked Jones whether or not she would give the spreadsheet to her administrative assistant, Jill Sumpter ("Sumpter"), the task to complete the other two (2) hospitals and she replied, "yes".

59.     On February 3, 2011 Relator Kane asked Sumpter if the report would be ready for his meeting later in the day, at which point Sumpter told him that she was never given the assignment by Jones.

60.     Later that day, Relator Kane met with Allise Williams ("Williams"), who helped supervise the government-billing department at Defendant Continuum.

61.     During that meeting, Relator Kane explained that he had a partial report detailing the over billings and he was asked to send it to a specific distribution of other meeting attendees.

62.     Accordingly, on February 4, 2011, Relator Kane provided several upper managers of Defendant Beth Israel: Dakis, Jones, Williams, Howard Lindenauer, Director Government Billing, and Cristobal Barriuso, Assistant Director of Government Billing, with a copy of his audit identifying the $1.4 million over billings.  The purpose of this communication was to push for full disclosure of the over billings.

63.     On February 8, 2011 (only two (2) business days after Relator Kane disclosed these significant overpayments to Defendant Continuum's upper management), he was terminated.

64.     Over sixty (60) days have lapsed since the overpayments were identified and reported by Relator Kane, but Defendants have not reported or returned those overpayments in violation of federal and state law.

## COUNT ONE
### (Kane, ex rel. United States of America v. Defendants)
### (Violation of 31 U.S.C. §3729(a))

65.     Relator Kane repeats and realleges the previous paragraphs as though set forth at length herein.

66.     Defendants have actual knowledge that significant Medicaid overpayments exist.

67.     Defendants have known of these overpayments for more than sixty (60) days and no corresponding cost report is due.

68.     Defendants have failed to report and return these overpayments.

69.     These failures are a violation of 31 U.S.C. §3729.

**WHEREFORE**, Relator Kane prays for judgment against the Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' violations of 31 U.S.C. §3729; a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. §3729; the maximum Relator award allowed pursuant to 31 U.S.C. §3730(d); all

costs of the action, including attorneys' fees and expenses and the Relator recover

such other relief as the Court deems just and proper.

## COUNT TWO
### (Kane, ex rel. State of New York v. Defendants)
### (Violation of the New York State Finance Law § 187, *et seq.*)

70.     Relator Kane repeats and realleges the previous paragraphs as though

set forth at length herein.

71.     This is a qui tam action brought by Relator Kane and the State of New

York to recover damages and civil penalties under the New York False Claims Act

(New York State Finance Law §187, *et seq.*) which provides for liability against

any person who "knowingly presents, or causes to be presented a false or

fraudulent claim for payment or approval."

72.     Defendants violated the New York False Claims Act and knowingly

failed to report and return over billings made, used and presented to the State of

New York for a substantial period of time.

73.     The State of New York, by and through the New York Medicaid and

other state healthcare programs, was unaware of Defendants' over billings, paid the

claims.

74.     Compliance with applicable federal and state law was an implied and

express condition of payment of claims submitted to the State of New York in

connection with Defendants' over billing practices.

75.     Had the State of New York known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by Defendants.

76.     As a result of Defendants' violations of the New York False Claims Act, the State of New York has been damaged in excess of millions of dollars exclusive of interest, all of which Defendants should be held accountable.

77.     Relator Kane is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New York False Claims Act.

78.     This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New York in the operation of its health care programs.

**WHEREFORE**, Relator Kane prays for judgment against the Defendants in an amount equal to three times the amount of damages the State of New York has sustained because of Defendants' violations; a civil penalty of not less than $6,000 and not more than $12,000 for each violation; the maximum Relator award allowed; all costs of the action, including attorneys' fees and expenses and the Relator recover such other relief as the Court deems just and proper.

**COUNT THREE**
**(Kane, ex rel. State of New Jersey v. Defendants)**
**(Violation of N.J.S.A. 2A:32C-1, et seq.)**

79.     Relator Kane repeats and realleges the previous paragraphs as though set forth at length herein.

80.     This is qui tam action brought by Relator Kane and the State of New Jersey to recover damages and civil penalties under N.J.S.A. 2A3:32C(g) which provides for liability against any person who "knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State."

81.     Defendants violated N.J.S.A. 2A:32C-3(g) and knowingly failed to report and return over billings made, used and presented to the State of New Jersey for a substantial period of time.

82.     The State of New Jersey, by and through the New Jersey Medicaid and other State health care programs was unaware of Defendants' over billing, paid the claims.

83.     Compliance with applicable federal and state law was an implied express condition of payment of claims submitted to the State of New Jersey in connection with Defendants' over billing practices.

84.     Had the State of New Jersey known that Defendants were violating federal and state laws cited herein, it would not have paid the claims submitted by Defendants.

85.     As a result of Defendants' violations of N.J.S.A. 2A:32-3(g), the State of New Jersey has been damaged in excess of millions of dollars exclusive of interest, all of which Defendants should be held accountable.

86.     Relator Kane is a private person with direct and independent knowledge of the allegations of this complaint, who has brought this action pursuant to N.J.S.A. 2A:32-3(g).

87.     This Court is requested to accept pendent jurisdiction of this related state claim as is predicated upon the exact same facts as the federal claim, and merely asserts a separate damage to the State of New Jersey in the operation of its heath care programs.

**WHEREFORE**, Relator Kane prays for judgment against the Defendants in an amount equal to three times the amount of damages the State of New Jersey has sustained because of Defendants' violations; a civil penalty of not less than $5,000 and not more than $10,000 for each violation; the maximum Relator award allowed; all costs of the action, including attorneys' fees and expenses; and the Relator recover such other relief as the Court deems just and proper.

**COUNT FOUR**
**(Kane v. Defendant Continuum)**
**(Violation of 31 U.S.C. §3730(h))**

88.     Relator Kane repeats and realleges the previous paragraphs as though set forth at length herein.

89.     31 U.S.C. §3730(h) provides as follows:

(h) Any employee who is discharged, demoted
suspended, threatened harassed, or in any other manner
discriminated against in the terms and conditions of
employment by his or her employer because of lawful
acts done by the employee on behalf of the employee or
others in furtherance of an action under this section,
including investigation for, initiation of, testimony for, or
assistance in an action filed or to be filed under this
section, shall be entitled to all relief necessary to make
the employee whole.  Such relief shall include
reinstatement with the same seniority status such
employee would have had but for the discrimination, 2
times the amount of back pay, interest on the back pay,
and compensation for any special damages sustained as a
result of the discrimination, including litigation costs and
reasonable attorneys' fees.  An employee may bring an
action in the appropriate district court of the United
States for the relief provided in this subsection.

90.    At all times relevant, Relator Kane was satisfactorily performing his

job.

91.    Relator Kane engaged in acts protected by the False Claim Act, 31

U.S.C. §3730(h).

92.    Because of these prohibited activities, Defendant Continuum Health

terminated Relator Kane's employment.

93.    This termination violated 31 U.S.C. §3730(h).

94.    As a result of this violation, Relator Kane has suffered and continues

to suffer from economic loss, emotional distress, loss of enjoyment of life, personal

physical injury and exacerbation of personal physical injury.

**WHEREFORE**, Relator Kane demands judgment against Defendant

Continuum Health Partners, Inc. for any and all compensatory and special

26

damages; two times the amount of back pay; personal physical injury; exacerbation

of pre-existing physical conditions; punitive damages; negative tax consequences

of any verdict or judgment; interest, counsel fees; costs of suit and expenses; and

such other relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b), <u>Fed.R.Civ.P.</u>, Relator Kane demands a trial by jury

in this action.

Dated: New York, New York
      May 15, 2014

Christopher E. Chang (CEC 3271)
Law Offices of Christopher E. Chang
140 Broadway, 46th Floor
New York, NY  10005
(212) 208-1470

Peter J. Heck (PJH 6760)
Niedweske Barber, LLC
98 Washington Street
Morristown, NJ  07960
(973) 401-0064

Attorneys for Relator Robert Kane

# Schedule A

# SCHEDULE A

1.    Defendant Healthfirst, Inc. ("Healthfirst")
      25 Broadway
      New York, New York  10004

2.    Defendant HF Management Services, LLC ("HF Management")
      25 Broadway
      New York, New York  10004

3.    Defendant Healthfirst Health Plan of New Jersey ("Healthfirst NJ")
      25 Broadway
      New York, New York  10004

# Schedule B

## SCHEDULE B

1.  Defendant Continuum Health Partners, Inc. ("Continuum Health")
    555 West 57th Street
    New York, New York 10019

2.  Defendant Beth Israel Medical Center ("Beth Israel MC")
    First Avenue at 16th Street
    New York, New York 10003

3.  Defendant St. Luke's-Roosevelt Hospital Center ("St. Luke's-Roosevelt")
    1111 Amsterdam Avenue
    New York, New York 10025

    1000 Tenth Avenue
    New York, New York 10019

4.  Defendant Long Island College Hospital ("Long Island CH")
    339 Hicks Street
    Brooklyn, New York  11201

5.  Defendant Bellevue Hospital Center ("Bellevue HC")
    462 First Avenue
    New York, New York  10016

6.  Defendant Blythedale Children's Hospital ("Blythedale CH")
    95 Bradhurst Avenue
    Valhalla, New York

7.  Defendant Bronx-Lebanon Hospital Center ("Bronx-Lebanon HC")
    1650 Grand Concourse
    Bronx, New York  10457

8.  Defendant The Brookdale University Hospital and Medical Center
    ("Brookdale UHMC")
    One Brookdale Plaza
    Brooklyn, New York  11212

9.   Defendant Brookhaven Memorial Hospital Medical Center ("Brookhaven MHMC")
101 Hospital Road
Patchogue, New York  11772

10.   Defendant The Brooklyn Hospital Center ("Brooklyn HC")
121 DeKalb Avenue
Brooklyn, New York  11201  Defendant ("Brooklyn HC

11.   Defendant Caritas Health Care-Mary Immaculate Hospital ("Caritas HC-Mary Immaculate`)
90-02 Queens Boulevard
Elmhurst, New York  11373

152-11 89th Avenue
Jamaica, New York

12.   Defendant Caritas Health Care-St. John's Queens ("Caritas HC-St. Johns")
374 Stockholm Street
Brooklyn, New York  11237

13.   Defendant Coler-Goldwater Specialty Hospital and Nursing Facility ("Coler-Goldwater SHNF`)
One Main Street
Roosevelt Island, New York  10044

14.   Defendant Community Hospital at Dobbs Ferry ("Community-DF")
128 Ashford Avenue
Dobbs Ferry, New York  10522

15.   Defendant Coney Island Hospital ("Coney Island")
2601 Ocean Parkway
Brooklyn, New York  11235

16.   Defendant Cumberland Diagnostic & Treatment Center ("Cumberland DTC")
100 North Portland Avenue
Brooklyn, New York  11205

17.   Defendant East New York Diagnostic & Treatment Center ("East NYDTC")
      2094 Pitkin Avenue
      Brooklyn, New York  11207

18.   Defendant Elmhurst Hospital Center ("Elmhurst HC")
      79-01 Broadway
      Elmhurst, New York  11373

19.   Defendant Flushing Hospital Medical Center ("Flushing HMC")
      45th Avenue and Parsons Boulevard
      Flushing, New York  11355

20.   Defendant Franklin Hospital Medical Center ("Franklin HMC")
      900 Franklin Avenue
      Valley Stream, New York  11580

21.   Defendant Good Samaritan Hospital Medical Center ("Good Samaritan HMC")
      1000 Montauk Highway
      West Islip, New York  11795

22.   Defendant ("Gouverneur HS")
      227 Madison Street
      New York, New York  10002

23.   Defendant Harlem Hospital Center ("Harlem HC")
      506 Lenox Avenue
      New York, New York  10037

24.   Defendant Hudson Valley Hospital Center ("Hudson Valley HC")
      1980 Crompond Road
      Cortlandt Manor, New York  10567

25.   Defendant Huntington Hospital ("Huntington")
      270 Park Avenue
      Huntington, New York  11743

26.   Defendant Interfaith Medical Center ("Interfaith MC")
      1545 Atlantic Avenue
      Brooklyn, New York  11213

27. Defendant Jacobi Medical Center ("Jacobi MC")
    1400 Pelham Parkway South
    Bronx, New York  10461

28. Defendant Jamaica Hospital Medical Center ("Jamaica HMC")
     89th Avenue and Van Wyck Expressway
    Jamaica, New York  11418

29. Defendant Kingsbrook Jewish Medical Center ("Kingsbrook Jewish MC")
    585 Schenectady Avenue
    Brooklyn, New York  11203

30. Defendant Kings County Hospital Center ("Kings County HC")
    451 Clarkson Avenue
    Brooklyn, New York  11203

31. Defendant Lawrence Hospital Center("Lawrence HC")
    55 Palmer Avenue
    Bronxville, New York  10708

32. Defendant Lenox Hill Hospital ("Lenox Hill")
    100 East 77th Street
    New York, New York  10075

33. Defendant Lincoln Medical and Mental Health Center ("Lincoln MMHC")
    234 East 149th Street
    Bronx, New York  10451

34. Defendant Long Beach Medical Center ("Long Beach MC")
    455 East Bay Drive
    Long Beach, New York  11561

35. Defendant Long Island Jewish Medical Center ("LIJMC")
    270-05 76th Avenue
    New Hyde Park, New York  11040

36. Defendant Lutheran Medical Center ("Lutheran MC")
    150 55th Street
    Brooklyn, New York  11220

37.  Defendant Maimonides Medical Center ("Maimonides MC")
     4802 Tenth Avenue
     Brooklyn, New York  11219

38.  Defendant Mercy Medical Center ("Mercy MC")
      1000 North Village Avenue
     Rockville Centre, New York  11570

39.  Defendant Metropolitan Hospital Center ("Metropolitan HC")
     1901 First Avenue
     New York, New York  10029

40.  Defendant Montefiore Medical Center ("Montefiore MC")
     1825 Eastchester Road
     Bronx, New York  10461

     111 East 210th Street
     Bronx, New York  10467

41.  Defendant Montefiore North Division (Previously Our Lade of Mercy
     Medical Center) ("Montefiore ND")
     600 East 233rd Street
     Bronx, New York  10466

42.  Defendant Morrisania Diagnostic & Treatment Center ("Morrisania DTC")
     1225 Gerard Avenue
     Bronx, New York  10452

43.  Defendant The Mount Sinai Hospital ("MSH")
     One Gustave L. Levy Place
     New York, New York  10029

44.  Defendant The Mount Sinai of Queens Hospital ("MSQH")
     25-10 30th Avenue
     Long Island City, New York

45.  Defendant The Mount Vernon Hospital ("MVH")
     12 North 7th Avenue
     Mount Vernon, New York  10550

46.   Defendant Nassau University Medical Center ("Nassau UMC")
      2201 Hempstead Turnpike
      East Meadow, New York  11554

47.   Defendant New Island Hospital ("New Island")
      4295 Hempstead Turnpike
      Bethpage, New York  11714

48.   Defendant New York Eye and Ear Infirmary ("New York EEI")
      310 East 14th Street
      New York, New York  10003

49.   Defendant New York Downtown Hospital ("New York Downtown")
      170 William Street
      New York, New York  10038

50.   Defendant North Central Bronx Hospital ("North Central Bronx")
      3424 Kossuth Avenue
      Bronx, New York  10467

51.   Defendant North General Hospital did business with Defendant Healthfirst.

52.   Defendant North Shore University Hospital Center ("North Shore UHC")
      300 Community Drive
      Manhasset, New York  11030

53.   Defendant North Shore University Hospital at Forest Hills ("North Shore-
      Forest Hills")
      102-01 66th Road
      Forest Hills, New York  11375

54.   Defendant North Shore University Hospital at Glen Cove ("North Shore-
      Glen Cove")
      101 St. Andrews Lane
      Glen Cove, New York  11542

55. Defendant North Shore University Hospital at Plainview ("North Shore-Plainview")
    888 Old Country Road
    Plainview, New York  11803

56. Defendant  Northern Westchester Hospital ("Northern Westchester")
    400 East Main Street
    Mount Kisco, New York  10549

57. Defendant Peconic Bay Medical Center ("Peconic Bay MC")
    1300 Roanoke Avenue
    Riverhead, New York  11901

58. Defendant Peninsula Hospital Center ("Peninsula HC")
    51-15 Beach Channel Drive
    Far Rockaway, New York  11691

59. Defendant Phelps Memorial Hospital ("Phelps MH")
    701 North Broadway
    Sleepy Hollow, New York  10591

60. Defendant Queens Hospital Center ("Queens HC")
    82-70 164th Street
    Jamaica, New York  11432

61. Defendant Renaissance Health Care Network Diagnostic & Treatment Center ("Renaissance HCNDTC")
    215 West 125 Street
    New York, New York  10027

62. Defendant Segundo Ruiz Belvis Diagnostic & Treatment Center ("Segundo Ruiz Belvis DTC")
    545 East 142nd Street
    Bronx, New York  10454

63. Defendant Sound Shore Medical Center at Westchester ("Westchester")
    100 Woods Road
    Valhalla, New York  10595

64. Defendant South Nassau Communities Hospital ("South Nassau")
    One Healthy Way
    Oceanside, New York 11572

65. Defendant Southside Hospital ("Southside"
    301 East Main Street
    Bay Shore, New York 11706

66. Defendant St. Barnabas Hospital ("St. Barnabas"
    4422 3rd Avenue
    Bronx, New York 10457

67. Defendant St. Catherine of Siena Hospital ("St. Catherine")
    50 Route 25A
    Smithtown, New York 11787

68. Defendant St. Charles Hospital & Rehabilitation Center ("St. Charles HRC")
    200 Belle Terre Road
    Port Jefferson, New York 11777

69. Defendant St. Joseph's Medical Center-Westchester ("St. Joseph-
    Westchester")
    275 North Street
    Harrison, New York 10528

70. Defendant St. John's Episcopal Hospital-South Shore ("St. Johns-South
    Shore")
    327 Beach 19th Street
    Far Rockaway, New York 11691

71. Defendant St. John's Riverside Hospital ("St. John's-Riverside")
    967 North Broadway
    Yonkers, New York 10701

72. Defendant Staten Island University Hospital ("Staten Island University
    Hospital  Staten Island UH")
    475 Seaview Avenue
    Staten Island, New York 11794

73.   Defendant Victory Memorial Hospital ("Victory MH") did business with
      Defendant Healthfirst.

74.   Defendant Westchester Medical Center ("Westchester MC")
      100 Woods Road
      Valhalla, New York  10595

75.   Defendant White Plains Hospital ("White Plains")
      41 East Post Road
      White Plains, New York  10601

76.   Defendant Winthrop Hospital ("Winthrop")
      259 First Street
      Minneola, New York  11501

77.   Defendant Woodhull Medical and Medical Health Center ("Woodhull
      MMHC")
      760 Broadway
      Brooklyn, New York  11206

78.   Defendant Wyckoff Heights Medical Center ("Wyckoff Heights MC")
      374 Stockholm Street
      Brooklyn, New York  11237

# Schedule C

## SCHEDULE C

1.   Defendant Children's Specialized Hospital ("Children's Specialized")
     150 New Providence Road
     Mountainside, New Jersey  07092

2.   Defendant Christ Hospital ("Christ Hospital")
     176 Palisade Avenue
     Jersey City, New Jersey  07306

3.   Defendant East Orange General Hospital ("East Orange GH")
     300 Central Avenue
     East Orange, New Jersey  07018

4.   Defendant Englewood Hospital and Medical Center ("Englewood HMC")
     350 Engle Street
     Englewood, New Jersey  07631

5.   Defendant Hoboken University Medical Center ("Hoboken UMC")
     308 Willow Avenue
     Hoboken, New Jersey  07030

6.   Defendant Holy Name Medical Center ("Holy Name MC")
     718 Teaneck Road
     Teaneck, New Jersey  07666

7.   Defendant Jersey City Medical Center ("Jersey City MC")
     355 Grand Street
     Jersey City, New Jersey  07302

8.   Defendant Palisades Medical Center ("Palisades MC")
     7600 River Road
     North Bergen, New Jersey  07047

9.   Defendant Raritan Bay Medical Center-Old Bridge ("Raritan Bay-Old Bridge")
     One Hospital Plaza
     Old Bridge, New Jersey  08857

10.   Defendant Raritan Bay Medical Center-Perth Amboy ("Raritan Bay-Perth Amboy")
      530 New Brunswick Avenue
      Perth Amboy, New Jersey 08861

11.   Defendant Robert Wood Johnson University Hospital Hamilton ("RWJU-Hamilton")
      One Hamilton Health Place
      Hamilton, New Jersey 08690

12.   Defendant St. Clare's Health System-Boonton ("St. Clare's-Boonton")
      130 Powerville Road
      Boonton Twp., New Jersey 07005

13.   Defendant St. Clare's Health System-Denville ("St. Clare's-Denville")
      25 Pocono Road
      Denville, New Jersey 07834

14.   Defendant St. Clare's Health System-Dover ("St. Clare's-Dover")
      400 West Blackwell Street
      Dover, New Jersey 07801

15.   Defendant St. Clare's Health System-Sussex ("St. Clare's-Sussex")
      20 Walnut Street
      Sussex, New Jersey 07461

16.   Defendant Saint Michael's Medical Center ("St. Michael's MC")
      111 Central Avenue
      Newark, New Jersey 07102

17.   Defendant Somerset Medical Center ("Somerset MC")
      110 Rehill Avenue
      Somerset, New Jersey 08876

18.   Defendant St. Joseph's Wayne Hospital ("St. Joseph's Wayne")
      224 Hamburg Turnpike
      Wayne, New Jersey 07470

19.   Defendant St. Joseph`s Hospital & Medical Center ("St. Joseph's HMC")
      703 Main Street
      Paterson, New Jersey 07503

20.   Defendant Trinitas Hospital ("Trinitas")
      225 Williamson Street
      Elizabeth, New Jersey 07207