

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 3, 2014

**BY ECF & FACSIMILE (212) 805-7943**
Hon. Edgardo Ramos
United States District Judge
United States Courthouse
40 Foley Square, Room 410
New York, New York 10007

      Re:   *United States of America et al. ex rel. Kane v. Continuum Health Partners, et al.*,
             11 Civ. 2325 (ER)

Dear Judge Ramos:

      We write respectfully on behalf of the United States of America (the "Government"), a plaintiff-intervenor in the above-referenced *qui tam* action, in response to the letter ("Ltr.") requesting a premotion conference filed on August 25, 2014, by defendants [Docket No. 42]. Defendants' letter misconstrues the facts as alleged in the Government's complaint in intervention and the applicable law. For these reasons, Defendants' proposed motion to dismiss has no merit. The Government thus requests that the Court permit the parties to begin discovery, even while any such motion is being briefed and considered by the Court.

      Defendants first argue that the allegations in the complaint do not satisfy the definition of an "obligation" in the False Claims Act ("FCA"), 31 U.S.C. § 3729(b)(3) because, in their view, the Kane email did not sufficiently "identif[y]" the claims that constituted overpayments. Defendants' argue that the Kane email did not "identif[y]" the overpaid claims because it identified only "the universe of claims that were potentially affected by a bill coding error caused by a third party," but "did not indicate whether those claims were billed to or paid by the Government," and indeed upon further review, "[a]pproximately half of the claims on Kane's email list were in fact not billed or paid." Ltr. at 1-2. They are wrong.

      The FCA prohibits "knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government," *id.* § 3729(a)(1)(G), commonly referred to as a "reverse false claim."[1] The FCA defines an

---

[1] The previous clause of this provision also prohibits "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government," *id.*, though this language is not part of the Government's claim in this case. *Cf.* Ltr. at 2 (asserting that the Government's complaint "fail[s] to state a claim based on the making or use of a false record or statement material to an 'obligation' under the first clause of § 3729(a)(1)(G).").

"obligation," in relevant part, as "an established duty, whether or not fixed, arising . . . from the retention of any overpayment," *id.* § 3729(b)(3), and an "overpayment" is further defined in the Affordable Care Act ("ACA") as "any funds that a person receives or retains under [the Medicare or Medicaid programs] to which the person, after applicable reconciliation, is not entitled," 42 U.S.C. § 1320a-7k(d)(4)(B).  The ACA provides that "[a]n overpayment must be reported and returned . . . by . . . the date which is 60 days after the date on which the overpayment was identified." *Id.* § 1320a-7k(d)(2).  Thus, if a recipient of Medicaid funds receives an overpayment and fails to repay it within 60 days from when the overpayment is identified, he has violated the FCA.

The Government has clearly alleged that Defendants received overpayments and that they failed to repay them within 60 days of their identification.  As alleged in the Government's complaint, Defendants were on notice from the New York State Office of the Comptroller (the "Comptroller") that they had submitted Medicaid claims that led to overpayments; they discovered that the source of these overpayments was a software issue; Defendants tasked Relator Robert Kane ("Kane") to identify all claims that had been affected by the software issue, and he did just that; and then Defendants terminated Kane the next day and "did nothing further with Kane's analysis or the claims identified therein."  U.S. Compl. ¶¶ 33-36.  Significantly, "[w]hile Kane's email indicated that further analysis was needed to corroborate his findings, Kane had successfully identified the vast majority of the claims that had been erroneously billed." *Id.* ¶ 35.

Defendants cannot sidestep their obligation to return overpayments by putting their heads in the sand — it simply cannot be that a healthcare provider that requests and receives an analysis showing hundreds of likely overpayments can avoid FCA liability by terminating the employee who prepared the analysis and then ignoring the analysis altogether. *See, e.g.*, *United States ex rel. Keltner v. Lakeshore Med. Clinic, Ltd.*, No. 11-cv-00892, 2013 WL 1307013, at *4 (E.D. Wis. Mar. 28, 2013) ("Relator . . . states a plausible claim for relief under [§ 3729(a)(1)(G)].  If the government overpaid defendant for [certain] services and defendant intentionally refused to investigate the possibility that it was overpaid, it may have unlawfully avoided an obligation to pay money to the government.").  This is especially true for a claim under the FCA, which defines "knowingly" broadly to include "acts in deliberate ignorance of the truth or falsity of the information; or . . . acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

Defendants further argue that the Government's complaint does not sufficiently allege that they "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decrease[d] an obligation" *id.* § 3729(a)(1)(G), to repay the overpayments they received because they "took [no] action to conceal, avoid, or decrease an obligation," Ltr. at 2.  To the contrary, however, the complaint alleges that Defendants requested and were in possession of a list of potentially affected claims and then chose to ignore it, and further terminated Kane after he provided them with the list.  It is unclear what additional "action" Defendants believe must be shown to have been taken in order to demonstrate, for example, that they "avoid[ed]" an obligation to repay the Government. *See, e.g.*, *Lakeshore Med.*, 2013 WL 1307013, at *5 ("Relator . . . may proceed under [§ 3729(a)(1)(G)] because she alleges that she notified defendant of the errors in the bills for [different] services and that defendant took no action to correct them.").  Moreover, as

Case 1:11-cv-02325-ER   Document 46   Filed 09/03/14   Page 3 of 3

Page 3

alleged in the complaint, all of this was going on while the Comptroller was investigating this issue, bringing additional potentially affected claims to Defendants' attention, and seeking repayment of those claims. U.S. Compl. ¶¶ 33-34, 37-38. Defendants did not inform the Comptroller of Kane's findings, thus also "conceal[ing]" their obligation to repay a larger universe of overpaid claims than those the Comptroller had identified.

Finally, Defendants argue that § 3729(a)(1)(G) does not encompass Medicaid overpayments because the Medicaid program is administered state-by-state rather than by the federal government. *See* Ltr. at 2. The False Claims Act unquestionably reaches the Medicaid program, more than half of which is funded by the federal government. *See, e.g.*, *United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 649-56 (S.D.N.Y. 2011). In any event, as cited above, in defining an "overpayment" for purposes of § 3729(a)(1)(G), Congress specifically included overpayments owed to the Medicaid program, *see* 42 U.S.C. § 1320a-7k(d)(4)(B) (specifically referring to "funds that a person receives or retains under subchapter . . . XIX," *i.e.*, 42 U.S.C. § 1396 *et seq.*, the Medicaid program).

For these reasons, the Government believes that any motion to dismiss filed by Defendants is meritless, and discovery should be allowed to commence immediately.

We thank the Court for its consideration of this matter.

    Respectfully,

    PREET BHARARA
    United States Attorney

By:   __s/Jean-David Barnea_____
    REBECCA C. MARTIN
    JEAN-DAVID BARNEA
    Assistant United States Attorneys
    Telephone: (212) 637-2714/2679
    Facsimile: (212) 637-2717
    Email: Rebecca.Martin@usdoj.gov
           Jean-David.Barnea@usdoj.gov

cc:    All counsel (BY ECF)